BURDICK, Justice.
Simona Manzanares appeals from the judgment entered following her guilty plea under a conditional plea agreement. She pled guilty to recruiting a criminal gang member under I.C. § 18-8504(l)(a) in exchange for the dismissal of a charge for providing a firearm to a criminal gang member under I.C. § 18-8505. On appeal, Man-zanares argues that: (1) I.C. § 18-8504(l)(a) (the “Recruiting Provision”) is unconstitutionally overbroad on its face and as applied for encroaching on the First Amendment right to free association; (2) I.C. § 18-8505 (the “Firearm Provision”) is unconstitutionally overbroad as applied for punishing her expressive conduct, unconstitutionally vague on its face and as applied for failing to adequately define “gang member,” and unconstitutional under the Second Amendment of the United States Constitution and Article I, Section 11 of the Idaho Constitution for prohibiting a class of persons from keeping or bearing arms; (3) her conviction violates the ex post facto clauses of the United States and Idaho constitutions; (4) the district court erred in failing to dismiss the information based on the information’s failure to enumerate all elements of the charged offenses; and (5) the district court erred in failing to dismiss the information based on insufficient evidence offered at the preliminary hearing.
I. FACTUAL AND PROCEDURAL BACKGROUND
The legislature adopted the Idaho Criminal Gang Enforcement Act (“ICGEA”), I.C. §§ 18-8501 et seq., effective March 24, 2006. 2006 Idaho Sess. Laws, ch. 184, § 1, pp. 582-85.[1] On February 27, 2007, Manzanares was charged with committing two felonies under the ICGEA: (1) recruiting a criminal gang member in violation of I.C. § 18-8504(l)(a); and (2) supplying a firearm to a gang member in violation of I.C. § 18-8505.
Under the Recruiting Provision, “[a] person commits the offense of recruiting criminal gang members by ... [kjnowingly soliciting, inviting, encouraging or otherwise causing a person to actively participate in a criminal gang.” Idaho Code § 18-8504(l)(a).[2] Count I of the Information (the “Recruiting Charge”), alleged that Manza-nares, from about September 21, 2006, until about February 2, 2007, “did knowingly solicit, invite, encourage or otherwise cause a person to actively participate in a criminal gang, The East Side Locas” in violation of the Recruiting Provision.
Under the Firearm Provision, “[a] person commits the offense of supplying firearms to a criminal gang if the person knows an individual is a gang member and supplies, sells or gives possession or control of any firearm to that gang member.” Idaho Code § 18-8505(1).[3] Count II of the Information (the *416 “Firearm Charge”), alleged that Manzanares, on or about October 13, 2006, in Canyon County “did knowingly supply, sell, or give possession or control of a firearm to Jackie Trinidad who the defendant knew to be a criminal gang member” in violation of the Firearm Provision.
Manzanares waived her preliminary hearing, and on March 21, 2007, she was bound over to the district court. The State filed the Information on March 22, 2007. Manzanares moved to dismiss both charges, arguing that the Recruiting Provision violates both the First Amendment of the United States Constitution and Article I, sections 9 and 10 of the Idaho Constitution and is unconstitutionally vague. She also argued that the Firearm Provision violates the Second Amendment of the United States Constitution and Article I, Section 11 of the Idaho Constitution. Finally, she argued that the Recruiting Charge failed to provide adequate notice of the alleged conduct believed to be criminal. Manzanares filed a Supplementary Motion to Dismiss, arguing that the statutory definition of “criminal gang member” in I.C. § 18-8502(2) is unconstitutionally vague to the extent that it applies to the Recruiting Provision and the Firearm Provision, both statutes are unconstitutionally overbroad, both charges fail to provide adequate notice of the alleged conduct believed to be criminal, and the Firearm Provision is unconstitutionally vague.
On July 27, 2007, the district court held a hearing to consider Manzanares’s motion to dismiss. On August 7, 2007, the district court conditionally granted the motion to dismiss the Recruiting Charge due to the vagueness of the charging language and gave the State seven days to amend the Information to include the name of the person Man-zanares allegedly recruited. The district court denied Manzanares’s motion to dismiss as to all other grounds raised by Manza-nares.
The State submitted the Amended Information on August 7, 2007. The Recruiting Charge was amended to name Jackie Trinidad as the person Manzanares allegedly recruited and to change the date of the alleged recruiting (from April 1, 2006, to February 27, 2007). The Firearm Charge was amended to change the date on which Manzanares allegedly supplied a firearm to Trinidad (from May 1, 2006, to May 15, 2006).
On August 9, 2007, the parties submitted a Stipulation to Remand Proceeding for Preliminary Hearing, because the Amended Information included information not previously disclosed to the Defendant: that Trinidad was the person allegedly recruited by Manza-nares. The district court remanded the case to the magistrate judge for a preliminary hearing, which was held on August 30, 2007.
At the preliminary hearing, the State called Corporal Joey Hoadley of the Caldwell Police Department to testify. Corporal Hoadley testified that he has had contact with Manzanares on numerous occasions and that she admitted to him that she is a member of the East Side Locos and that she is the leader of the female branch of the East Side Locos, called the East Side Locas. Corporal Hoadley then testified to specific encounters he had with Manzanares, setting forth various facts associating her with the East Side Locos and East Side Locas.
According to Corporal Hoadley, State’s Exhibit 1, which is a photograph obtained from a vehicle in which Manzanares was riding with a gang member who was arrested, depicts Jackie Trinidad at Manzanares’s home, wearing gang attire and holding a firearm with Manzanares standing behind her and flashing the common gang sign for the East Side Locos or East Side Locas. Corporal Hoadley also testified as to State’s Exhibit 2, which he says is a copy of Manza-nares’s MySpaee webpage and includes pictures of Manzanares, pictures of other mem *417 bers of the East Side Locos and East Side Locas and numerous other gang references.
Corporal Hoadley testified that on December 5, 2006, Manzanares voluntarily spoke with him at the Caldwell Police Department. She admitted to being the leader of the East Side Locas. She said that membership in the East Side Locas had dwindled from approximately twenty members initially to less than ten members as people moved, got married, became pregnant, and were incarcerated. She explained that to become a member of the gang one must go through an initiation process called the “jump in”, which involves being battered by several gang members for a specified amount of time. She said that the gang funds itself by selling illegal narcotics, by “house shopping” (burglarizing a house), and by “car shopping” (burglarizing a car).
Finally, Corporal Hoadley testified on State’s Exhibit 3, which included an audio recording from Manzanares’s MySpaee web-page, which he identified as the voice of Manzanares. He testified that based on his expertise on gangs, the language from the audio recording (“For all your Sureños out there keep bangin’, homies.”) “is encouraging people to continue in gang activity, committing crimes, committing violence.”
The State also called Jackie Trinidad to testify at the preliminary hearing. Trinidad testified that on December 31, 2005, she attended a New Year’s Eve party at Manza-nares’ sister’s house. She testified that she and others were drinking alcohol at the party and that one of her friends asked her if she wanted to get jumped in. She testified that Manzanares was at the party and that Man-zanares did not say anything about jumping her in but that Manzanares did join others in hitting her as pai’t of the jumping in. When asked what she does as a member of the East Side Locas, Trinidad said: “Not really anything, like we would just hang out, go to [Manzanares’s] house, have barbecues.”
Trinidad testified that the reason she attended the 2005-2006 New Year’s Eve party (at which she was jumped in to the East Side Locas) was that her friend Maria wanted to go. Trinidad testified that she hardly knew Manzanares prior to that party and had not previously talked to Manzanares about the East Side gangs. She testified that Maria told her at the party that someone, maybe but not specifically Manzanares, did not want people coming over who were not “Eastsid-ers.”
Trinidad also testified that at a barbecue at Manzanares’s house in May 2006, she and Manzanares went to the garage because “that’s where all the beer was”, and while in the garage, Manzanares “showed [a gun] to me and like we decided to take pictures.” Trinidad explained that the gun was wrapped up in a towel on a couch in the garage, Manzanares gave the gun to her, and they both decided to take 'the picture, which was submitted as State’s Exhibit 1 (the photograph about which Corporeal Hoadley testified). Trinidad testified that in the photograph, she is holding a gun and wearing a jersey with the number 13, which she wore to show that she was a member of the gang, and Manzanares is “throwing up Eastside.” Trinidad testified that Manzanares knew Trinidad was a gang member on the day of the barbecue and that this was an East Side barbecue. On cross examination, Trinidad testified that the photograph depicts the only time she ever handled the gun, and the only reason she handled it was for the purpose of taking the photograph.
Trinidad also testified that she knew Man-zanares had a website and that she had listened to the audio message (State’s Exhibit 3). She testified that Manzanares encouraged East Side members to go tagging, which involves spray-painting messages and symbols related to the East Side gangs in public places, but that “nobody really ever did anything” and “[o]nly the guys did [go tagging].”
At the conclusion of the preliminary hearing, the magistrate found that there was probable cause for both the Recruiting Charge and the Firearm Charge, explaining:
The jumping in is sufficient enough for the language of [the Recruiting Charge] that was testified to by Ms. Trinidad. With regard to the [Firearm Charge], once again, the photograph, the testimony indicates she ... handed her the gun. Therefore, Jackie Trinidad did in fact, after be *418 coming a gang member and known to Ms. Manzanares, have possession of a firearm.
The statute further provides, however, that a — it has to be a criminal gang, as defined by the statute, which was the issue the Court had. The definition of a criminal gang is set out in Idaho Code 18-8502, Subsection 1, and requires a whole number of elements, the first of which — all of which in the paragraph are met up until we get to the point of a further definition. It refers to paragraph 3 in that same code section, and paragraph 3 is the definition of pattern of criminal gang activity and requires language to qualify as a pattern of gang activity there could be two or more convictions or offenses, certain enumerated charges. However, Subsection 1 doesn’t say it has to be convictions. And there is testimony before the Court that the defendant told the officer that they had been— they engaged in certain activities, none of which are shown convictions or proven, but they are enumerated in 3(a) though.
And, as a result, I’m going to bind over since you can all brief this statute to death.
The magistrate filed an Order Binding Defendant Over to District Court.
On September 4, 2007, the State filed the Second Amended Information. In this final version of the information, the Recruiting Charge alleges that Manzanares recruited Trinidad sometime from April 1, 2006, to February 26, 2007, and the Firearm Charge alleges that Manzanares gave Trinidad possession of a firearm sometime from May 1 through 15, 2006.
Manzanares was arraigned on September 7, 2007. On December 17, 2007, Manzanares filed another motion to dismiss, arguing that the evidence offered at the preliminary hearing was insufficient to bind her over and reasserting her previous motion to dismiss. On January 22, 2008, the district court held a hearing on the motion to dismiss, and on February 8, 2008, the district court denied the motion, finding that there was substantial evidence upon which the magistrate could find probable cause as to both the Recruiting Charge and the Firearm Charge.
On June 27, 2008, Manzanares moved to dismiss in light of the United States Supreme Court decision in District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). It does not appear that this motion was ever heard or decided.
On July 10, 2008, Manzanares entered into a conditional plea agreement. She agreed to enter an Alford plea[4] to the Recruiting Charge in exchange for dismissal of the Firearm Charge. Manzanares reserved her right to appeal “the issue of the constitutionality of the charge and statute, and such other matters that might appear in the record of this action.” The district court accepted Manzanares’s plea and dismissed the Firearm Charge. On August 28, 2008, following a two-day sentencing hearing, the district court imposed a ten-year unified sentence with two years fixed for the Recruiting Charge.
On September 11, 2008, the district court entered the Judgment and Commitment, and on September 25, 2008, Manzanares filed the Notice of Appeal to this Court.
II. STANDARD OF REVIEW
As set forth in State v. Korsen, 138 Idaho 706, 711, 69 P.3d 126, 131 (2003):
The party challenging a statute on constitutional grounds bears the burden of establishing that the statute is unconstitutional and ‘must overcome a strong presumption of validity.’ Appellate courts are obligated to seek an interpretation of a statute that upholds its constitutionality.
(Citations omitted).
As we explained in State v. Hosey, 134 Idaho 883, 886, 11 P.3d 1101, 1104 (2000):
A plea agreement is contractual in nature and must be measured by contract law standards. The interpretation of a contract’s meaning and legal effect are questions of law to be decided by the *419 Court if the terms of the contract are clear and unambiguous. The meaning of an unambiguous contract must be determined from the plain meaning of the contract’s own words. Where a contract is determined to be ambiguous, interpretation of the contract is a question of fact that focuses on the intent of the parties. Whether the facts establish a violation of the contract is a question of law over which this Court exercises free review.
(Citations omitted).
III. ANALYSIS
A. All issues Manzanares raises concerning the Firearm Charge are moot, because the Firearm Charge was dismissed.
Manzanares pled guilty to the Recruiting Charge in exchange for the dismissal of the Firearm Charge. The second issue Manzanares raises on appeal challenges the constitutionality of the Firearm Provision, and the fourth and fifth issues she raises on appeal, which challenge the information and the sufficiency of the evidence at the preliminary hearing, contain sub-issues specifically concerning the Firearm Charge. The State argues that these issues are moot, because the Firearm Charge was dismissed pursuant to the plea agreement. Manzanares argues that the claims are not moot, because if this Court holds in favor of Manzanares on one of the issues related to the Recruiting Charge, I.C.R. 11(a)(2) affords Manzanares the right to withdraw her guilty plea, in which case the State would be able to re-file the Firearm Charge.
Under the mootness doctrine:
This Court may dismiss an appeal when it appeal’s that the ease involves only a moot question. A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. A case is moot if it presents no justiciable controversy and a judicial determination will have no practical effect upon the outcome.
Goodson v. Nez Perce Cnty. Bd. of Cnty. Comm’rs, 133 Idaho 851, 853, 993 P.2d 614, 616 (2000) (citations omitted).
Manzanares is correct that if we were to rule in her favor on the Recruiting Charge, she would be permitted to withdraw her guilty plea pursuant to I.C.R. 11(a)(2), and the State would be able to re-file the Firearm Charge. Under such circumstances, if we were to address the constitutionality of the Firearm Provision on this appeal, our ruling could affect the State’s decision to re-file the Firearm Charge and could affect any resulting case. However, ruling on the Firearm Charge issues has no practical effect on this appeal and would be an impermissible advisory opinion. See State v. Barclay, 149 Idaho 6, 9, 232 P.3d 327, 330 (2010) (“In effect, the State is asking this Court to issue an advisory opinion in order to avoid the issue in future cases; an exercise this Court will not undertake.”). Thus, we hold that all issues raised by Manzanares which concern the Firearm Charge were rendered moot when the Firearm Charge was dismissed.
Manzanares also argues that she specifically reserved the right to appeal these issues in the conditional plea agreement. However, parties cannot agree to confer jurisdiction on a court. State v. Urrabazo, 150 Idaho 158, 163, 244 P.3d 1244, 1249 (2010) (“subject matter jurisdiction can never be waived or consented to”). Thus, even if the conditional plea agreement purports to reserve these issues for appeal, we are nevertheless without jurisdiction to consider these issues.
B. We cannot reach Manzanares’s ex post facto argument, because there was no adverse ruling on this issue below which could be reserved for appeal pursuant to I.C.R. 11(a) and because this issue is non-jurisdictional and does not involve fundamental error.
The third issue Manzanares raises on appeal is whether the Recruiting Charge is an ex post facto violation. We explained in Wheeler v. Idaho Department of Health and Welfare-.
Ex post facto laws are prohibited by article I, section 9, clause 3 of the United States Constitution and by article I, section 16 of the Idaho Constitution. The ex *420 post facto clauses prevent the enactment of ‘any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed_’ Collins v. Youngblood, 497 U.S. 37, 42, 110 S.Ct. 2715, 2716-17 111 L.Ed.2d 30, 39 (1990) (quoting Beazell v. Ohio, 269 U.S. 167, 169-70, 46 S.Ct. 68, 70 L.Ed. 216, 217 (1925)).
147 Idaho 257, 262, 207 P.3d 988, 993 (2009).
The ICGEA became effective on March 24, 2006. 2006 Idaho Sess. Laws, eh. 184, § 1, p. 585. Even though the complaint, as well as each draft of the information, allege that Manzanares recruited a gang member on a date(s) subsequent to the ICGEA’s effective date; the specific incident of recruiting which the State focused on at the preliminary hearing concerned a New Year’s party on December 31, 2005 — nearly three months prior to the ICGEA’s effective date. Thus, Manza-nares argues that her conviction violates the ex post facto clauses of the Idaho and United States constitutions, because the Recruiting Charge to which she pled guilty was based on her conduct at the New Year’s party— prior to the enactment of the ICGEA.
“Ordinarily, a plea of guilty, if voluntarily and knowingly made, is conclusive as to the defendant’s guilt and waives all non-jurisdictional defects in prior proceedings against the defendant. A defendant may preserve such defects or issues by entering a conditional guilty plea pursuant to I.C.R. 11(a)(2).” Hosey, 134 Idaho at 889, 11 P.3d at 1107 (citation and quotation omitted). Thus, Manzanares’s ex post facto issue is properly before us on appeal only if either: (1) her conditional plea agreement reserved the issue under I.C.R 11(a)(2); or (2) the issue is jurisdictional.
Manzanares’s conditional plea agreement states that she reserves her light to appeal “the issue of the constitutionality of the charge and statute, and such other matters that might appear in the record of this action.” Pursuant to I.C.R. 11(a)(2):
With the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty reserving in writing the right, on appeal from the judgment, to review any specified, adverse ruling. If the defendant prevails on appeal, the defendant shall be allowed to withdraw defendant’s plea.
(Emphasis added). “Failure to comply with this rale results in a waiver of any issues not properly reserved for appellate review.” State v. Kelchner, 130 Idaho 37, 39, 936 P.2d 680, 682 (1997). As Manzanares concedes in her briefing, the ex post facto issue was never raised below. Thus, there was no adverse ruling below addressing this issue which could have been reserved for appeal. Accordingly, we hold that Manzanares’s conditional plea agreement did not reserve the issue for appeal.
Next, we consider whether Manzanares’s ex post facto issue is jurisdictional. While personal jurisdiction may be waived, subject matter jurisdiction cannot be waived and “may be raised at any time, including for the first time on appeal.” State v. Rogers, 140 Idaho 223, 227, 91 P.3d 1127, 1131 (2004). “In a criminal case, the court properly acquires personal jurisdiction over the defendant when the defendant appears at the initial court setting on a complaint or arraignment on the indictment.” Id. at 228, 91 P.3d at 1132 (emphasis added). “The information, indictment, or complaint alleging an offense was committed within the State of Idaho confers subject matter jurisdiction upon the court.” Id. (emphasis added). Manzanares does not argue that the information fails to confer jurisdiction. She acknowledges that the Complaint, Information, Amended Information and Second Amended Information all allege that Manzanares recruited a gang member in violation of I.C. § 18-8504(l)(a) in Canyon County, Idaho, on a date(s) subsequent to the enactment of the ICGEA. Thus, we hold that Manzanares’s ex post facto issue is not jurisdictional and was, therefore, waived by pleading guilty.
Finally, Manzanares also argues that the ex post facto issue is properly before this Court because it involves fundamental error. “As a general rale, we will not consid *421 er arguments made for the first time on appeal. When the alleged error constitutes a fundamental error, however, review on appeal is permissible.” State v. Severson, 147 Idaho 694, 715-16, 215 P.3d 414, 435-36 (2009) (citations omitted). However, “we permit a defendant to waive a right of constitutional magnitude, so long as the defendant does so knowingly, voluntarily, and intelligently.” State v. Perry, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010). Manzanares makes no attack on the validity of the conditional plea agreement. Thus, she waived the ex post facto issue by knowingly, voluntarily, and intelligently entering into the plea agreement.
Furthermore, even if Manzanares had not waived this issue, she failed to meet her burden of persuading the appellate court that the alleged error violates a constitutional right. If Manzanares’s conviction under the Recruiting Statute was based on the incident which took place at the New Year’s party, then the ex post facto clauses of the United States Constitution and the Idaho Constitution would be implicated, since the conduct forming the basis of her conviction would have taken place prior to the ICGEA’s effective date. However, in this case, we do not know what conduct formed the basis of Manzanares’s conviction. Manzanares entered an Alford plea and, thus, did not admit to any conduct that could form the basis of her guilty plea. See infra Part IILC.ii.a. At the preliminary hearing, the State’s evidence that Manzanares recruited Trinidad was not limited to the New Year’s incident. The State also put forth evidence of an audio recording of Manzanares’s voice posted online encouraging listeners to take part in the East Side Locas gang activities, which Trinidad testified to having listened to, and testimony that Manzanares encouraged members of the East Side Locas to go tagging. The magistrate judge relied on this evidence as well as the evidence concerning the New Year’s party when he found probable cause to bind her over. Therefore, despite being labeled as an “ex post facto ” issue, and despite Manzanares’s claim on appeal that she pled guilty based on her conduct at the New Year’s party, we have no way of knowing from the record what conduct serves as the basis of Manzanares’s conviction. Accordingly, we hold that Manzanares has not met the burden of showing a clear error that violated one of her unwaived constitutional rights.
C. Idaho Code § 18-8504(1) (a) (the Recruiting Provision) is not facially overbroad nor as-applied unconstitutional for prohibiting conduct protected by the First Amendment.
Manzanares argues that the Recruiting Provision is both facially and as applied unconstitutional for penalizing her First Amendment rights to free association and free expression. We hold that the Recruiting Provision is not facially overbroad because it does not prohibit a substantial amount of protected conduct, and we hold that Manzanares has not shown that it is as applied unconstitutional because, due to the circumstances of this case, she is unable to demonstrate what conduct on her part provides the basis of her conviction.
i. Reservation for appeal pursuant to I.C.R. 11(a)(2).
While we find that Manzanares’s conditional plea agreement reserved the facial and as applied challenges for appeal, we take the time to emphasize the proper means of reserving issues for appeal pursuant to I.C.R. 11(a)(2).
A conditional plea agreement should explicitly set forth the adverse ruling(s) below which is being reserved for appeal. Idaho Criminal Rule 11(a)(2) permits a defendant to reserve for appeal any “specified adverse ruling” when entering into a conditional plea agreement. (Emphasis added). See also State v. McCormack, 117 Idaho 1009, 1010, 793 P.2d 682, 683 (1990) (“I.C.R.ll(a)(2) clearly requires that any issued desired to be reserved for appeal must be specified in writing.”). That said, where a conditional plea agreement itself lacks such specificity, Idaho appellate courts will review the record in an attempt to determine what the conditional plea agreement reserves for appeal. See, e.g., State v. Anderson, 129 Idaho 763, 764, 932 P.2d 886, 887 (1997), (“This Court will sustain an appeal under *422 Rule 11(a)(2) if we can determine the nature of the appeal and the right reserved for the appeal with specificity from the record.”). However, we emphasize that the best practice is to explicitly set forth the adverse rulings which are being reserved for appeal in the conditional plea agreement. If the agreement lacks such specificity, there is a risk that the appellate court will be unable to determine from the record what the parties sought to reserve for appeal.
Manzanares’s conditional plea agreement broadly purports to reserve the right to appeal: (1) “the issue of the constitutionality of the charge and statute” and (2) “such other matters that might appear in the record of this action.” The broad reservation of “matters that might appear in the record of this action” does not explicitly set forth any adverse ruling(s), but apparently seeks to reserve for appeal any adverse ruling from the prior proceedings. While narrower, the language “the issue of the constitutionality of the charge and statute” also fails to explicitly refer to any adverse ruling below.
Upon review of the record, we are able to ascertain that the language “the issue of the constitutionality of the charge and statute” refers to the adverse ruling on the constitutionality of the Recruiting Statute from district court’s August 7, 2007 Order. At the plea hearing, Manzanares’s attorney stated: “The part of the plea agreement that I suppose is most critical at this point is the fact that my client reserves the right to appeal the matter to the Supreme Court testing the statute under which she’s pleading guilty this morning.” And, Manzanares answered in the affirmative to the following question asked by the district court at the plea hearing: “[Y]ou have agreed to plead guilty, but that you’re reserving your right to appeal the constitutionality of that statute?” From these statements at the plea hearing, it is clear that Manzanares sought to reserve the right to challenge the constitutionality of the statute to which she pled guilty — the Recruiting Statute. Manzanares’s June 12, 2007 Motion to Dismiss asserted, amongst other arguments, that the Recruiting Statute is overbroad, and in its August 7, 2007 Order, the district court denied Manzanares’s motion to dismiss as to the overbreadth challenge. Thus, we find that Manzanares reserved the right to appeal the district court’s ruling that the Recruiting Statute is not overbroad.[5]
ii. Constitutional challenges to the Recruiting Provision.
Manzanares argues that the Recruiting Provision (I.C. § 18-8504(l)(a)) is unconstitutionally overbroad for criminalizing association, speech, and expressive conduct in violation of the First Amendment of the United States Constitution and Article I, sections 9 and 10 of the Idaho Constitution. According to Manzanares, by not requiring the State to prove that the defendant recruited the gang member with the specific intent to further the criminal activities of the gang, the Recruiting Provision generally criminalizes too much constitutionally protected conduct to be facially valid and, as applied to the particulars of this case, criminalizes Manzanares’s exercise of protected conduct.
The Recruiting Provision provides that a person commits the offense of recruiting a criminal gang member by “[k]nowingly soliciting, inviting, encouraging or otherwise causing a person to actively participate in a criminal gang.”[6] The ICGEA defines “Criminal gang” as:
*423 an ongoing organization, association, or group of three (3) or more persons, whether formal or informal, that has a common name or common identifying sign or symbol, whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity, having as one (1) of its primary activities the commission of one (1) or more of the criminal acts enumerated in subsection (3) of this section.
Idaho Code § 18-8502(1). “Pattern of criminal gang activity” is defined in the ICGEA as “the commission, attempted commission, or solicitation of two (2) or more [enumerated offenses], provided that the offenses are committed on separate occasions or by two (2) or more gang members”. Idaho Code § 18-8502(3).
Putting the pieces of the ICGEA together, in order to convict a defendant under the Recruiting Provision, the State bears a difficult burden. Preliminarily, the State must establish that there is a gang by proving (1) there is an ongoing organization, group or association (2) with a common name or sign (3) consisting of at least three members. Next, the State must prove that the gang is a “criminal gang”. The ICGEA sets forth two criteria that must be met to show that a gang is a criminal gang. First, the State must prove that (4) members of the gang (5) individually or collectively committed, attempted to commit, or solicited at least two of the ICGEA’s enumerated offenses and that (6) the two enumerated offenses were committed either on separate occasions or by two or more gang members. Second, the State must prove that (7) the commission of one or more of the ICGEA’s enumerated criminal offenses is one of the gang’s “primary activities”.
In addition to establishing the existence of a “criminal gang,” the State must prove that the defendant knowingly solicited, invited, encouraged, or otherwise caused a person to “actively participate in the criminal gang.” Under Idaho’s criminal code: “The word ‘knowingly,’ imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of the unlawfulness of such act or omission.” I.C. § 18-101(5). Since “criminal gang” is a defined term under the ICGEA (I.C. § 18-8502(1)), in order to “actively participate in a criminal gang,” a person must actively participate in those activities that bring the organization into the ICGEA’s definition of “criminal gang.” Thus, putting these pieces together, after the State proves the existence of a criminal gang (as set forth in the preceding paragraph), the State must prove that the defendant (1) knew of the criminal gang and (2) knowingly solicited, invited, encouraged, or otherwise caused someone to “actively participate in” either (a) the criminal gang’s commission of one of the ICGEA’s enumerated offenses or (b) in making it one of the criminal gang’s “primary activities” to commit one or more of the IGGEA’s enumerated crimes.

a. Facial challenge.

Manzanares argues that the Recruiting Provision overbroadly criminalizes association, speech and expressive conduct in violation of the First Amendment of the United States Constitution and Article I, sections 9 and 10 of the Idaho Constitution. We find that the Recruiting Provision does not prohibit a significant amount of protected conduct and, therefore, is not unconstitutionally overbroad.
“The overbreadth doctrine is aimed at statutes which, though designed to prohibit legitimately regulated conduct, include within their prohibitions constitutionally protected freedoms.” Korsen, 138 Idaho at 713, 69 P.3d at 133. The two-part test for unconstitutional overbreadth asks (1) whether the statute regulates constitutionally protected conduct, and (2) whether the statute precludes a significant amount of that constitutionally protected conduct. Id. If the answer to both steps is in the affirmative, then the statute is overbroad. See id. “A statute that is found to be overbroad may not be enforced at all, even against speech or conduct that could constitutionally be prohibited by a more narrowly drawn statute.” Id. at *424 714, 69 P.3d at 134. “Only if the statute intrudes upon a substantial amount of constitutionally protected conduct may it be struck down for overbreadth.” Id. (emphasis added) (quotation omitted). “[A] statute will not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications. Rather, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court.” Id. (quotation and citation omitted).
The First Amendment of the United States Constitution, which guarantees the right to free expression, peaceable assembly and seeking redi’ess with our government, applies to the states through the Fourteenth Amendment. Elfbrandt v. Russell, 384 U.S. 11, 18, 86 S.Ct. 1238, 1241-42, 16 L.Ed.2d 321, 325-26 (1966). While not explicitly stated in the First Amendment, the First Amendment guarantees individuals the right to free association. Healy v. James, 408 U.S. 169, 181, 92 S.Ct. 2338, 2346, 33 L.Ed.2d 266, 279 (1972). “The right to associate for expressive purposes is not, however, absolute.” Roberts v. U.S. Jaycees, 468 U.S. 609, 623, 104 S.Ct. 3244, 3252, 82 L.Ed.2d 462, 475 (1984). “The freedom of association protected by the First Amendment does not extend to joining with others for the purpose of depriving third parties of their lawful rights.” Madsen v. Women’s Health Ctr., 512 U.S. 753, 776, 114 S.Ct. 2516, 2530, 129 L.Ed.2d 593, 614 (1994). However, “[t]he right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected.” NAACP v. Claiborne Hardware Co., 458 U.S. 886, 908, 102 S.Ct. 3409, 3423, 73 L.Ed.2d 1215, 1233 (1982).
First, we find that the Recruiting Provision, as a law which criminalizes the recruitment of members into an organization, implicates the First Amendment right to free association, even though the organizations at issue are involved in criminal activity. Thus, we turn to the second step of the over-breadth analysis and ask whether the Recruiting Provision precludes a significant amount of that constitutionally protected conduct.
Manzanares draws our attention to a line of eases in which the United States Supreme Court considered statutes which placed certain penalties or restrictions on members of the Communist Party: Scales v. United States, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961); Noto v. United States, 367 U.S. 290, 81 S.Ct. 1517, 6 L.Ed.2d 836 (1961); Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); and Elfbrandt, 384 U.S. 11, 86 S.Ct. 1238. Based on this line of cases, Manzanares argues that joining an organization can be criminalized only if the statute requires proof that the defendant had the specific intent to further the organization’s criminal enterprise. We do not read these cases to set forth such a blanket rule.
In Elfbrandt, the Supreme Court relied on Scales, Noto, and Aptheker to invalidate a state law subjecting teachers to criminal punishment for being members of the Communist Party or any other organization advocating for the violent overthrow of the government, stating: “Any lingering doubt that proscription of mere knowing membership, without any showing of ‘specific intent,’ would run afoul of the Constitution was set at rest by our decision in Aptheker .... ” 384 U.S. at 16, 86 S.Ct. at 1240, 16 L.Ed.2d at 324. The Supreme Court noted that the statute at issue did not include a specific intent requirement, and the Supreme Court stated:
One who subscribes to this Arizona oath and who is, or thereafter becomes, a knowing member of an organization which has as ‘one of its purposes’ the violent overthrow of the government, is subject to immediate discharge and criminal penalties. Nothing in the oath, the statutory gloss, or the construction of the oath and statutes given by the Arizona Supreme Court, purports to exclude association by one who does not subscribe to the organization’s unlawful ends.
Id. The Supreme Court went on to explain:
Those who join an organization but do not share its unlawful purposes and who do *425 not participate in its unlawful activities surely pose no threat, either as citizens or as public employees. Laws such as this which are not restricted in scope to those who join with the ‘specific intent’ to further illegal action impose, in effect, a conclusive presumption that the member shares the unlawful aims of the organization.
Id. at 17, 86 S.Ct. at 1241, 16 L.Ed.2d at 325.
This line of cases generally sets forth that a statute is overbroad if it criminalizes conduct like merely joining, membership in or participation in an organization (even if that organization engages in criminal activity) without distinguishing people who do not share the goals of the organization’s unlawful purposes and do not participate in its unlawful activities. And these cases set forth that a requirement of specific intent to further the criminal activity of the organization sufficiently narrows the statutes at issue in those eases. However, those cases do not foreclose the possibility that there are other ways in which a statute might be drafted narrowly enough to survive an overbreadth challenge. Thus, even though the Recruiting Provision does not contain a specific intent requirement, we must still look to the language of the Recruiting Provision to determine whether it precludes a substantial amount of protected conduct.
In focusing on the lack of a specific intent requirement, Manzanares simply overlooks what the Recruiting Provision does require the State to prove: that the defendant knew of the existence of the criminal gang and that the defendant knowingly solicited, invited, encouraged or otherwise caused a person to actively participate in either the criminal gang’s commission of one of the ICGEA’s enumerated offenses or in making the commission of one of those crimes one of the primary activities of the criminal gang. While knowledge is a different mens rea than specific intent, we find that the Recruiting Provision is sufficiently narrow to avoid implicating a substantial amount of protected conduct.
Merely soliciting, inviting, encouraging, or otherwise causing a person to be a member of an organization or to associate or interact with that organization, even where that organization qualifies as a criminal gang under the ICGEA, does not necessarily amount to soliciting, inviting, encouraging, or otherwise causing that person to “actively participate in a criminal gang” under the Recruiting Provision. For example, if a defendant knowingly invites a person to merely attend a lawful political rally or religious event organized and hosted by a group that the defendant knows to be a criminal gang, the defendant has not knowingly invited a person to actively participate in the criminal gang’s commission of any of the offenses enumerated in the ICGEA and, thus, has not recruited that person as a gang member pursuant to I.C. § IS — 8504(l)(a). However, where a defendant knowingly invites a person to somehow promote, further or assist in the commission of the ICGEA’s enumerated offenses by any member of the criminal gang, then the defendant has invited a person to actively participate in the criminal gang.
The State relies heavily on Holder v. Humanitarian Law Project, in which the United States Supreme Court recently upheld 18 U.S.C. § 2339B(a)(l), which makes it a crime to “knowingly provid[e] material support or resources to a foreign terrorist organization.” -U.S. -, -, 130 S.Ct. 2705, 2712, 177 L.Ed.2d 355, 368 (2010) (alteration in original). The term “material support or resources” is defined by statute as:
any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials.
18 U.S.C. § 2339B(a)(l). The Secretary of State has the authority, in consultation with the Secretary of the Treasury and the Attorney General, to designate an entity a “foreign terrorist organization” pursuant to statute upon finding that the organization is foreign, engages in terrorist activity or terrorism, and thereby threatens the security of United States nationals or the national security of *426 the United States. See Holder, — U.S. at -, 130 S.Ct. at 2713, 177 L.Ed.2d at 368. In Holder, the plaintiffs challenged the prohibition on four types of material support: training; expert advice or assistance; service; and personnel. Id. at-, 130 S.Ct. at 2716, 177 L.Ed.2d at 371.
Manzanares points out unique characteristics of the Holder decision, which indicate that Holder may have limited applicability: the Supreme Court noted that the war on terror is a uniquely compelling government objective; the Supreme Court emphasized the legislative findings linking the provision of material support to foreign terrorist organizations with terrorist activity; and the statute at issue applied only to foreign terrorist organizations. Despite these differences, we find that Holder is instructive in its general analysis of an overbreadth challenge. In Holder, the plaintiffs argued that the statute violated their freedom of association under the First Amendment by criminalizing the mere fact of their associating with two designated foreign terrorist organizations. Id. at-, 130 S.Ct. at 2730, 177 L.Ed.2d at 387. The Court dismissed this argument, explaining: “The statute does not prohibit being a member of one of the designated groups or vigorously promoting and supporting the political goals of the group.... What [the statute] prohibits is the act of giving material support.” Id.
In Holder, the Supreme Court relied on its decision in United States v. Robel, which considered an overbreadth challenge to section 5(a)(1)(D) of the Subversive Activities Control Act of 1950, “which provides that, when a Communist-action organization is under a final order to register, it shall be unlawful for any member of the organization ‘to engage in any employment in any defense facility.’ ” 389 U.S. 258, 260, 88 S.Ct. 419, 421, 19 L.Ed.2d 508, 511-12 (1967). In Robel, the Supreme Court held that the statute was overbroad and explained: “It is precisely because th[e] statute sweeps indiscriminately across all types of association with Communist-action groups, without regal’d to the quality and degree of membership, that it runs afoul of the First Amendment.” Id. at 262, 88 S.Ct. at 423, 19 L.Ed.2d at 513. Turning to the case at hand, we do not find that the Recruiting Provision sweeps indiscriminately across all types of association with criminal gangs and without regard to the quality and degree of membership such that it runs afoul of the First Amendment.
Similarly to the plaintiffs in Holder, Man-zanares argues that the Recruiting Provision is overbroad in violation of her First Amendment right to free association by criminalizing her mere association with, or her causing of other persons association with, criminal gangs. However, we find that the Recruiting Provision does not criminalize joining, or advocating for the lawful goals of, an organization that happens to be a criminal gang under the ICGEA While there may be imaginable instances in which I.C. § 18-8504(l)(a) penalizes conduct protected under the First Amendment, we find that the statute does not implicate a substantial amount of constitutionally protected conduct. Should such imaginable instances arise, the as-applied challenge is available to protect the defendant’s constitutional rights. Therefore, we hold that the Recruiting Provision is not facially overbroad.
b. As applied challenge.
Manzanares argues that the Recruiting Provision is unconstitutional as applied to her for infringing on her right to association and expression, because the district court concluded that she could be brought to trial based on the mere fact that she participated in Trinidad’s initiation into the East Side Locas without any evidence that she did so with the specific intent to further the allegedly illegal activities of the gang.
“To prove a statute is unconstitutional ‘as applied,’ the party challenging the constitutionality of the statute must demonstrate that the statute, as applied to the defendant’s conduct, is unconstitutional.” State v. Cook, 146 Idaho 261, 262, 192 P.3d 1085, 1086 (Ct.App.2008) (citing Korsen, 138 Idaho at 712, 69 P.3d at 132). “If a statute as applied to a particular defendant infringes upon his or her freedom of speech protected by the First Amendment, the defendant’s conviction must be reversed without any showing that such infringement was ‘substan *427 tial.’” State v. Poe, 139 Idaho 885, 893, 88 P.3d 704, 712 (2004) (citing Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971)).
Manzanares failed to show that the Recruiting Provision is unconstitutional as applied to her conduct, because she cannot point to the conduct of hers which serves as the basis of her conviction. In Cook, the Court of Appeals noted that “an as-applied constitutional challenge is based on the particular facts of a defendant’s case and it is often difficult to ascertain what those facts are without the benefit of a trial.” 146 Idaho at 263, 192 P.3d at 1087. We agree, and we find that this is particularly trae when, as is the case here: (1) the information does not refer to specific conduct of the defendant; (2) the preliminary hearing provides little factual specificity and sets forth more than one course of conduct which could serve as the basis for the charge; and (3) where the defendant enters an Alford plea.
First, the information does not set forth the specific conduct by which Manzanares allegedly recruited Trinidad — it merely provides that Manzanares “on or about the 1st day of April, 2006, to the 26th day of February, 2007, in the County of Canyon, State of Idaho, did knowingly solicit, invite, encourage or otherwise cause a person, Jackie Trinidad, to actively participate in a criminal gang, The East Side Locas.”
Second, while the evidence presented at the preliminary hearing sheds some light on the State’s basis for charging Manzanares under the Recruiting Provision, the preliminary hearing provides little factual specificity on a number of the elements that the State would have had to prove to convict her under I.C. § 18-8504(l)(a). As already explained supra at Part III.B, while Manzanares claims on appeal that she pled guilty based on her alleged participation in jumping Trinidad into the East Side Locas at the New Year’s party, the State put forth additional evidence concerning Manzanares’s website and her requests for members of East Side Locas to go tagging as well as her knowledge of the East Side Locas’ criminal activity.
Third, by entering an Alford plea, Manza-nares did not admit to any conduct on her part which related to the charge. She made no admissions during the plea colloquy as to any conduct she engaged in that violates the Recruiting Provision. Thus, we cannot ascertain how the Recruiting Provision was applied to Manzanares. Accordingly, we hold that she failed to show that the Recruiting Provision was applied to her in a manner that infringed upon her First Amendment rights.
D. In light of our decision, the two remaining issues raised by Manzanares need not be addressed.
Manzanares’s remaining two issues on appeal are whether the district court erred in failing to dismiss the information on the bases that (1) the information failed to enumerate all of the elements of the offense charged and (2) insufficient evidence was presented at the preliminary hearing. Both of these claims, as Manzanares explains in her briefing, are contingent upon this Court reading into the Recruiting Provision an element of specific intent on the defendant’s behalf to further the criminal gang’s illegal activities. We have not read such an element into the Recruiting Provision (supra Part Ill.C.ii.b), and accordingly, we need not reach these issues.
IV. CONCLUSION
We uphold Manzanares’s conviction pursuant to her conditional plea agreement. Idaho Code § 18-8504(l)(a) (ICGEA’s Recruiting Provision) is not unconstitutionally over-broad, because the statute, as drafted by the legislature, does not infringe upon a substantial amount of conduct protected by the First Amendment. Manzanares failed to show that the Recruiting Provision was unconstitutional as applied to her.
Justices EISMANN, J. JONES and W. JONES concur.

. The ICGEA’s Statement of Purpose provides in part:
This legislation is the result of recommendations made by the Governor’s Criminal Justice Commission. Gang activity has become increasingly prevalent in Idaho, and it is important that law enforcement agencies, prosecutors, and judges have the necessary tools to address this issue. This legislation provides definitions; extends sentences for gang members who commit certain crimes; criminalizes recruitment of criminal gang members; and creates a new felony for supplying firearms to a criminal gang member.
S.B. 1336, R.S. 1584 58th Leg., 2d Reg. Sess. (Idaho 2006).

. Idaho Code § 18-8504, entitled “Recruiting criminal gang members”, provides in full:
(1) A person commits the offense of recruiting criminal gang members by:
(a) Knowingly soliciting, inviting, encouraging or otherwise causing a person to actively participate in a criminal gang; or
(b) Knowingly using force, threats, violence or intimidation directed at any person, or by the infliction of bodily injury upon any person, to actively participate in a criminal gang.
(2) A person convicted of a violation of this section shall be imprisoned for a term not to exceed ten (10) years.
(3) This section shall not be construed to limit prosecution under any other provision of law.

.Idaho Code § 18-8505, entitled "Supplying firearms to a criminal gang”, provides in full:
*416 (1) A person commits the offense of supplying firearms to a criminal gang if the person knows an individual is a gang member and supplies, sells or gives possession or control of any firearm to that gang member.
(2) Subsection (1) of this section shall not apply to a person who is convicted as a principal to the offense committed by the recipient of the firearm.
(3)A person convicted of a violation of this section shall be imprisoned for a term not to exceed ten (10) years or be fined an amount not to exceed fifty thousand dollars ($50,000), or both.

. See North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Pursuant to an Alford plea, the defendant pleads guilty but refuses to admit to the commission of the acts constituting the crime. State v.Dopp, 124 Idaho 481, 485, n. 1, 861 P.2d 51, 55, n. 1 (1993).

. Note, even if Manzanares had failed to reserve the district court's ruling on the overbreadth of the Recruiting Statute, her facial overbreadth challenge is a jurisdictional issue which can be raised on appeal. However, her as applied challenge is not jurisdictional and would be waived. In State v. Trochinski, 253 Wis.2d 38, 644 N.W.2d 891, 904, n. 15 (2002), the Wisconsin Supreme Court explained:
Trochinski has waived his right to challenge Wis. Stat. § 948.11(2) as applied, because of his plea. State v. Molitor, 210 Wis.2d 415, 419, 565 N.W.2d 248 (Ct.App.1997). "A plea of no contest waives all non-jurisdictional defects in the proceedings.” Id. (citing State v. Princess Cinema of Milwaukee, Inc. 96 Wis.2d 646, 651, 292 N.W.2d 807 (1980)). In contrast, a facial challenge to the constitutionality of a statute is a matter of subject matter jurisdiction and cannot be waived. Molitor, 210 Wis.2d 415 at 419, 565 N.W.2d 248; State ex rel. Skinkis v. Treffert, 90 Wis.2d 528, 538-539, 280 N.W.2d 316 (Ct.App.1979).

. Idaho Code § 18 — 8504(l)(b) provides an alternative way of committing the crime of recruiting a criminal gang member. Part (b) is not at issue *423 in this case, and this opinion does not address that provision.