RAY, J.
Naymontie Enoch appeals his convictions and sentences pursuant to sections 874.05(1) and 874.11, Florida Statutes (2009). At issue is the constitutionality of these statutes enacted to protect the public from crimes committed by criminal gangs. Concluding that section 874.05(1) is constitutional, we affirm the conviction and sen *348 tence on that count. However, because section 874.11 substantially treads upon protected speech and expressive conduct, associational activity, and other innocent acts and cannot be suitably narrowed to comport with federal and state constitutional requirements, we are constrained to reverse the conviction and sentence on that count.
Section 874.05(1), the “gang recruitment” provision, was enacted to protect the public from speech and conduct used to encourage gang membership, where a condition of membership or continued membership is the commission of any crime. Section 874.11, the “electronic communication” regulation, proscribes the use of such communication to intimidate or harass others, or to advertise one’s presence in the community, for the purpose of benefiting, promoting, or furthering the interests of a criminal gang. In the instant case, the two counts in the amended information essentially repeated the statutory language and referred to specific conduct occurring between August 25 and September 16, 2009, which the State intended to prove with a DVD containing YouTube videos of Enoch. Enoch moved to dismiss the information.
After the trial court denied the motion to dismiss, Enoch entered a plea of no contest to both counts, expressly reserving his right to appeal the denial of this dis-positive motion. Defense counsel told the court that she and Enoch had discussed what evidence the State would have presented had the case gone to trial, and counsel believed the prosecution had a sufficient factual basis to go forward. The prosecutor gave a brief factual recitation for both counts (basically tracking the two statutes), which the court accepted without an objection. The judge found the plea was freely, knowingly, and voluntarily made; adjudicated Enoch guilty; and sentenced him on the first count to 36 months’ incarceration, to be followed by two years’ probation; and on the second count to five years’ probation, to be served consecutively to the probationary term in the first count. This direct appeal followed.

MOTION TO DISMISS INFORMATION

The motion to dismiss asserted that sections 874.05(1) and 874.11 are, as a matter of constitutional law, void for vagueness because they contain terms so unclear that a person of common intelligence must necessarily guess at their meaning. See U.S. Const. amend. V; State v. Hagan, 387 So.2d 943, 945 (Fla.1980). The motion alleged also that both statutes violate the Due Process Clause of the Florida Constitution because they are susceptible to unreasonable, arbitrary, and capricious application. See Art. I, § 9, Fla. Const.; State v. DeLeo, 356 So.2d 306, 307 (Fla.1978). In a third claim, Enoch contended the statutes violate freedom of speech and association under the federal and state constitutions. See U.S. Const. amend. I; Art. I, § 4, Fla. Const. In this appeal, Enoch raises these facial constitutional challenges to the “gang recruitment” and “electronic communication” statutes.

THE STATUTORY DEFINITIONS

Chapter 874, Florida Statutes (2009), is known as the “Criminal Gang Prevention Act.” § 874.01. The Florida Legislature has defined certain key terms pertinent to Enoch’s constitutional claims:
“Criminal gang” means a formal or informal ongoing organization, association, or group that has as one of its primary activities the commission of criminal or delinquent acts, and that consists of three or more persons who have a common name or common identifying signs, colors, or symbols, including, *349 but not limited to, terrorist organizations and hate groups.
§ 874.08(1).
“[P]rimary activities” means that a criminal gang spends a substantial amount of time engaged in such activity, although such activity need not be the only, or even the most important, activity in which the criminal gang engages.
§ 874.03(l)(b).
“Criminal gang member” is a person who meets two or more of the following criteria:
(a) Admits to criminal gang membership.
(b) Is identified as a criminal gang member by a parent or guardian.
(c) Is identified as a criminal gang member by a documented reliable informant.
(d) Adopts the style of dress of a criminal gang.
(e) Adopts the use of a hand sign identified as used by a criminal gang.
(f) Has a tattoo identified as used by a criminal gang.
(g) Associates with one or more known criminal gang members.
(h) Is identified as a criminal gang member by an informant of previously untested reliability and such identification is corroborated by independent information.
(i) Is identified as a criminal gang member by physical evidence.
Cj) Has been observed in the company of one or more known criminal gang members four or more times. Observation in a custodial setting requires a willful association. It is the intent of the Legislature to allow this criterion to be used to identify gang members who recruit and organize in jails, prisons, and other detention settings.
(k) Has authored any communication indicating responsibility for the commission of any crime by the criminal gang. Where a single act or factual transaction satisfies the requirements of more than one of the criteria in this subsection, each of those criteria has thereby been satisfied for the purposes of the statute.
§ 874.03(3).
“Criminal gang associate” means a person who:
(a) Admits to criminal gang association; or
(b) Meets any single defining criterion for criminal gang membership described in subsection (3).
§ 874.03(2).
“Electronic communication” has the meaning provided in s. 934.02[ (12), Fla. Stat.] and includes, but is not limited to, photographs, video, telephone communications, text messages, facsimile, electronic mail messages as defined in s. 668.602[ (7), Fla. Stat.], and instant message real-time communications with other individuals through the Internet or other means.
§ 874.03(5).

STANDARD OF REVIEW

Constitutional challenges to statutes are pure questions of law, subject to de novo review. Crist v. Ervin, 56 So.3d 745, 747 (Fla.2010). Generally, a statute is presumed constitutional and the challenging party has the burden to establish the statute’s invalidity beyond a reasonable doubt. See State v. Lick, 390 So.2d 52, 53 (Fla.1980). It is our duty “to construe challenged legislation to effect a constitutional outcome whenever possible.” Fla. Dep’t of Revenue v. Howard, 916 So.2d 640, 642 (Fla.2005). “[A] state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts.” Erznoznik v. City of *350 Jacksonville, 422 U.S. 205, 216, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975). “To uphold a statute in the face of a constitutional challenge, a court may place a saving construction on the statute when this does not effectively rewrite the statute.” Fla. Dep’t of Children & Families v. F.L., 880 So.2d 602, 607 (Fla.2004).

CLAIMS OF UNCONSTITUTIONALITY

A. First Amendment
The First Amendment challenges require us to determine whether section 874.05(1) and/or section 874.11 violates freedom of speech and freedom of association. “At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence.” Turner Broad. Sys., Inc. v. Fed. Commc’ns Comm’n, 512 U.S. 622, 641, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). “To many, the immediate consequence of this freedom may often appear to be only verbal tumult, discord, and even offensive utterance.” Cohen v. California, 403 U.S. 15, 24-25, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). That is, the fundamental rights embodied in the First Amendment compel the courts to “protect the freedom to express even ‘the thought that we hate.’ ” Christian Legal Soc’y Chapter of Univ. of Cal., Hastings Coll. of Law v. Martinez, — U.S. -, 130 S.Ct. 2971, 3000, 177 L.Ed.2d 838 (2010) (Alito, J., dissenting) (quoting United States v. Schwimmer, 279 U.S. 644, 654-55, 49 S.Ct. 448, 73 L.Ed. 889 (1929) (Holmes, J., dissenting)). Enoch asserts both statutes infringe on First Amendment rights because they proscribe speech, expressive conduct, and associational activity without reference to actual, imminent criminal activity, and are impermissibly overbroad, in that a substantial number of their applications are unconstitutional when compared to the clearly valid aspect of each provision.
1. Section 871.05(1): The “Gang Recruitment” Statute
The “gang recruitment” statute implicated in Count One states:
874.05 Causing, encouraging, soliciting, or recruiting criminal gang membership.—
(1) Except as provided in subsection (2) [which deals with a second or subsequent violation], a person who intentionally causes, encourages, solicits, or recruits another person to become a criminal gang member where a condition of membership or continued membership is the commission of any crime commits a felony of the third degree, punishable as provided in [various statutes].
§ 874.05(1), Fla. Stat. (2009). Because this provision regulates speech, expressive conduct, and associational activity, we must submit its proscriptions to First Amendment analysis. State v. Shank, 795 So.2d 1067, 1069 (Fla. 4th DCA 2001).
a. Freedom of Speech and Expression
Being a content-based regulation that focuses specifically on what the solicitor/recruiter says and does, this provision is examined under the “strict scrutiny” standard. Turner, 512 U.S. at 641-43, 114 S.Ct. 2445. A statute survives scrutiny if it is “narrowly tailored to promote a compelling Government interest.... ” United States v. Playboy Entm’t Grp., Inc., 529 U.S. 803, 804, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). As an exception to the general constitutional presumption accorded to statutes and ordinances, content-based restrictions on expression are presumed invalid, and the government bears the heavy burden of showing the provision is constitutional. See Ashcroft v. ACLU, 542 U.S. *351 656, 660, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004).
In “free speech” cases where the U.S. Supreme Court has found a compelling governmental interest justifying content-based restrictions, the interest has related to the people’s well-being. See Osborne v. Ohio, 495 U.S. 103, 109-10, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990); New York v. Ferber, 458 U.S. 747, 756-57, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); United States v. Stevens, 533 F.3d 218, 227 (3d Cir.2008), aff'd, — U.S. -, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010); Simmons v. State, 944 So.2d 317, 328-29 (Fla.2006). These decisions have dealt with serious matters, including speech that incites imminent illegal activity or is inextricably connected with criminal acts. See, e.g., Ferber, 458 U.S. at 756-57, 102 S.Ct. 3348. Without a sufficient connection to crime, gang membership itself is not illegal, and encouraging gang membership is not properly viewed as part of, or integral to, the commission of a crime. State v. O.C., 748 So.2d 945, 950 (Fla.1999).
State government has inherent police powers to promote public order, safety, health, morals, and the general welfare of society within constitutional limits. See Powell v. Pennsylvania, 127 U.S. 678, 683, 8 S.Ct. 992, 32 L.Ed. 253 (1888). The crisis caused by criminal gangs’ proliferation, increasing sophistication, possession of dangerous weapons, and systematic illegal activities against other gangs and against peaceful citizens is well-known and widely documented in legislative findings, statements of intent, and secondary legal authorities. See, e.g., § 874.02(2)-(3), Fla. Stat. (2009); Colo.Rev.Stat. § 16-15.8-101(1) (2012); Wash. Rev.Code § 9.41.225 (2012); People v. Lamas, 42 Cal.4th 516, 67 Cal.Rptr.3d 179, 169 P.3d 102, 109 (2007) (Baxter, J., concurring); Rodrigo M. Caruco, In the Trenches of Florida’s War on Gangs: A Framework for Prosecuting Florida’s Anti-Gang Sentence Enhancement Provision, 14 Barry L. Rev. 97, 100-02 (2010).
In enacting statutes addressing criminal gang recruitment and the use of electronic communication to promote criminal gang interests, the Florida Legislature has attempted to strike a proper balance between protecting fundamental rights and using legitimate governmental police powers to fight the scourge of gang-related criminal activity. See § 874.02(1), Fla. Stat. (2009) (“The Legislature recognizes the constitutional right of every citizen to harbor and express beliefs on any lawful subject whatsoever, [and] to lawfully associate with others who share similar beliefs -”); § 874.02(2) (acknowledging “a mounting crisis caused by criminal gangs whose members threaten and terrorize peaceful citizens and commit a multitude of crimes”). Section 874.02(3) evinces a clear intent “to outlaw certain conduct associated with the existence and proliferation of criminal gangs,” including recruitment and the instrumentalities used to facilitate illegal activity by criminal gangs.
The Legislature is committed to protecting the public from the illegal activities of gangs, which have evolved into “increasingly sophisticated and complex organized crime groups in their criminal tactics, schemes, and brutality.” § 874.02(2). Because this is an integral part of the State’s paramount interest in fighting crime, it fulfills “a government objective of surpassing importance.” Ferber, 458 U.S. at 757, 102 S.Ct. 3348. Enoch does not assert otherwise. Regarding the first prong of strict scrutiny, we conclude that the State has a compelling interest in thwarting solicitation and recruitment into gangs where criminal conduct is a condition of membership or continued membership. See State v. J.P., 907 So.2d 1101, 1116-17 (Fla.2004) *352 (finding cities’ juvenile curfew ordinances furthered the State’s compelling interest in protecting juveniles from victimization and reducing juvenile crime); State v. T.B.D., 656 So.2d 479, 482 (Fla.1995) (“Florida has a compelling interest in protecting the right of each of its citizens to live at peace in the sanctity of his or her home, free from violence and the threat of violence.”).
Under the second prong of strict scrutiny, we review section 874.05(1) to ascertain whether it is narrowly tailored to promote the compelling governmental interest. Enoch contends this provision forbids criminal gang solicitation and recruitment without reference to actual criminal activity because it does not require the recruited person to know that committing any crime is a condition of membership or continued membership. Indeed, under Florida’s broad statutory definitions of “criminal gang” and “criminal gang member,” a person can join or associate with such a group without any actual intent to commit a crime. § 874.03(1), (3).[1] Enoch’s argument, however, misconstrues section 874.05(1). This statute criminalizes the speech and conduct of the solicitor/recruiter, rather than the person solicited or recruited.
We therefore must consider the elements of the offense relating to the speech and conduct of the solicitor/recruiter in light of Enoch’s First Amendment challenges. In relevant part, the statute provides that “a person who intentionally causes, encourages, solicits, or recruits another person to become a criminal gang member where a condition of membership or continued membership is the commission of any crime commits a felony of the third degree.... ” Although the language of section 874.05(1) is silent regarding whether the solicitor/recruiter must know of the crime-related condition of gang membership, silence alone does not necessarily suggest the legislative body “intended to dispense with a conventional mens rea element, which would require that the defendant know the facts that make his conduct illegal.” Staples v. United States, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (holding that in order to convict a defendant of illegal possession of an automatic weapon the government had to prove the defendant knew of the automatic character of the weapon); see Morissette v. United States, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952); State v. Giorgetti, 868 So.2d 512, 515 (Fla.2004). In such instances where legislative intent is not obvious, we follow the conventional analysis used by the U.S. Supreme Court and applied by the Florida Supreme Court.
At common law, the general rule was that scienter was a necessary element in charging and proving a crime; this rule was applied to statutory crimes, even where the statutory definition did not expressly include it. See United States v. Balint, 258 U.S. 250, 251-52, 42 S.Ct. 301, 66 L.Ed. 604 (1922). Mindful of this principle, the Florida Supreme Court has opined that the U.S. Supreme Court “has virtually created a presumption in favor of a guilty knowledge element absent an express provision to the contrary.” Giorgetti, 868 So.2d at 515.
We find no indication of legislative intent to dispense with knowledge of the criminal condition of membership and related intent to incite lawlessness in section 874.05(1). The Legislature would have explicitly stated its purpose if it had intended to (1) criminalize those persons who inten *353 tionally encourage and recruit membership into a criminal gang, but are wholly ignorant of the crime-linked condition of membership or continued membership; (2) punish inactive participants who lack any intent to promote and further the criminal gang’s illegal activities and incite lawlessness; and (3) subject such persons to substantial terms of incarceration. See Giorgetti, 868 So.2d at 516, 518-19. Courts have taken great care “to avoid construing a statute to dispense with mens rea where doing so would ‘criminalize a broad range of apparently innocent conduct.’ ” Staples, 511 U.S. at 610, 114 S.Ct. 1793 (quoting Liparota v. United States, 471 U.S. 419, 426, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (addressing statute proscribing knowingly using, transferring, acquiring, altering, or possessing food stamp coupons or authorization cards in a manner not authorized and requiring knowledge of the illegal conduct)); see State v. Adkins, 96 So.3d 412, 2012 WL 2849485 (Fla. 2012) (noting that “the omission of a scienter element from the definition of a criminal offense can result in a due process violation where the omission results in criminalizing conduct protected by the First Amendment....”). The criminal consequences at issue here are harsh. Both counts charged third-degree felonies, which are punishable by a prison term not exceeding five years. See § 775.082(3)(d), Fla. Stat. (2009).
Having carefully considered the reasoning in Staples v. United States and State v. Giorgetti, and acknowledging the express connection between membership and crime, we conclude section 874.05(1) requires proof that a person intentionally “cause, encourage, solicit, or recruit” another person to become a criminal gang member and do so with knowledge that membership or continued membership is conditioned on the imminent commission of a crime. Our interpretation of this statute is consistent with the principle of First Amendment law that in resolving a facial challenge to a provision, the provision will be upheld if it is “ ‘readily susceptible’ to a narrowing construction.” Virginia v. Am. Booksellers Ass’n, 484 U.S. 383, 397, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). This reading also depends in substantial measure on the Legislature’s express acknowledgment in section 874.02(1) of its intent to protect the constitutional rights of freedom of expression and association.
Enoch acknowledges the case law holding that even content-based speech can be restricted if it is integral to criminal conduct. State v. Stalder, 630 So.2d 1072, 1077 (Fla.1994) (“When protected speech translates into criminal conduct, even the Free Speech Clause balks.”). He asserts, however, that if section 874.05(1) is not facially invalid in all its applications, it is still impermissibly overbroad. On this claim, Enoch has standing. In First Amendment overbreadth challenges, an exception to the usual rule of standing dispenses with the “requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.” Dombrowski v. Pfister, 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). The justification for this exception is that others who wish to engage in legally protected expression may feel compelled to refrain from doing so rather than either risk prosecution or seek to have the regulation declared partially invalid. See Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985).
In the First Amendment context, a court must find a statute unconstitutionally overbroad if “it reaches a substantial number of impermissible applications,” Ferber, 458 U.S. at 771, 102 S.Ct. 3348, “judged in *354 relation to the statute’s plainly legitimate sweep.” Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); Stevens, 130 S.Ct. at 1587. “[B]ecause application of the overbreadth doctrine is ‘strong medicine,’ it should be employed sparingly by courts.” Sult v. State, 906 So.2d 1013, 1022 (Fla.2005).
To explain why the speech and conduct contemplated in section 874.05(1) have a sufficient nexus to criminal conduct, we look to Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), the U.S. Supreme Court’s “seminal advocacy case.” McCoy v. Stewart, 282 F.3d 626, 631 (9th Cir.2002). The State of Ohio prosecuted Brandenburg, a Ku Klux Klan (KKK) group leader, based on evidence he had invited a news reporter to a KKK organizers’ rally in a remote location. Brandenburg, 395 U.S. at 444-45, 89 S.Ct. 1827. With the planners’ cooperation, the reporter and a cameraman attended the meeting and filmed the events. The film showed twelve hooded figures, some of whom carried firearms, gathered around a wooden cross, which they burned. Brandenburg, 395 U.S. at 445, 89 S.Ct. 1827. The only persons present were the participants and the newsmen who filmed the activities. Id. at 445-46, 89 S.Ct. 1827. The film depicted Brandenburg and others uttering derogatory remarks about African Americans and Jews. Strident calls were made to take back the government on behalf of the white race and to “bury” or send away certain non-Caucasian people based on their color or religion, with the possibility that “some revengeance [would be] taken.” Id. at 446, 89 S.Ct. 1827. Brandenburg was convicted under a syndicalism statute for “advocating ... the duty, necessity, or propriety of crime, sabotage, violence, or unlawful methods of terrorism as a means of accomplishing industrial or political reform” and for “voluntarily assembling] with any society, group or assemblage of persons formed to teach or advocate the doctrines of criminal syndicalism.” Id. at 444-45, 89 S.Ct. 1827.
Reviewing the Brandenburg record, the U.S. Supreme Court stated this well-established principle:
[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.
Id. at 447, 89 S.Ct. 1827. “Imminent” means not only impending or ready to take place, but also expected, likely to occur, or hanging threateningly over one’s head. American Heritage Dictionary of the English Language 658 (1973). That is, the speech or expressive conduct must be directed to producing expected lawlessness and must be likely to incite such action. See Brandenburg, 395 U.S. at 447, 89 S.Ct. 1827. “The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it.” Ashcroft v. Free Speech Coal., 535 U.S. 234, 253, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). A statute that fails to recognize this distinction between merely abstract advocacy of force and violence at some indefinite, future time, on the one hand, and actual preparation of a group for an expected, imminent criminal act “and steeling it to such action,” on the other hand, treads upon First and Fourteenth Amendment freedoms. Brandenburg, 395 U.S. at 448, 89 S.Ct. 1827; see also Hess v. Indiana, 414 U.S. 105, 108-09, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973); Dennis v. United States, 341 U.S. 494, 508, 516-17, 71 S.Ct. 857, 95 L.Ed. 1137 (1951) (finding a “clear and present danger” arose and Smith Act conspiracy provisions that required an unlawful intent *355 to overthrow the government by force and violence as speedily as circumstances allowed went well beyond mere discussion and did not offend the First Amendment). Because the statute in Brandenburg punished persons for merely advocating crime or violence to bring about political reform, the Court found it violated First Amendment protections. 395 U.S. at 448-49, 89 S.Ct. 1827.
We must examine the overbreadth challenge to section 874.05(1) in light of this critical difference between abstract advocacy and actual incitement to imminent lawlessness. In fashioning a law that would avoid overbreadth problems, the Legislature sought to craft statutory language balancing the compelling governmental interest in curbing criminal gangs’ illegal activities with the need to respect and protect permitted speech and expressive conduct. § 874.02(1)-(2). Intentionally soliciting or recruiting a person to become a member of a group having as one of its primary activities the commission of criminal or delinquent acts, where a condition of membership or continued membership is the commission of any crime, goes beyond protected speech that merely advocates crime in an abstract sense. See Brandenburg, 395 U.S. at 447-48, 89 S.Ct. 1827.
Considering the implicit but significant requirement of mens rea, and the conditional language linking the intentional solicitation or recruitment to the inevitable commission of “any crime,” we conclude section 874.05(1) does not infringe upon a substantial amount of constitutionally protected ground and is not unconstitutionally overbroad. The Legislature has narrowly tailored this law to effect its intended purpose to promote public safety and prevent crime without impermissibly intruding upon the rights of law-abiding persons or, for that matter, the discrete lawful activities of gang members. See § 874.02(1). Enoch’s “freedom of speech” challenge to section 874.05(1) fails. We find support for our position from out-of-state courts that have analyzed similar statutes.[2]
The defendant in Helton v. Indiana, 624 N.E.2d 499 (Ind.Ct.App.1993), appealed his conviction for participating in criminal gang activity, a violation of Indiana Code section 35-45-9-3 (1993), which proscribed knowing or intentional active participation in a criminal gang. Another statute defined “criminal gang” as a group of three or more persons that “promotes, sponsors, or assists in,” “participates in,” or “requires as a condition of membership or continued membership ... the commission of a felony” or equivalent offense. Id. § 35-45-9-1(1)-(2).
The court of appeals construed the provision as requiring that the person: (1) actively participate in a group that promotes, sponsors, assists in, or participates in (and requires its members to commit) felonies; (2) have knowledge of the criminal gang’s advocacy of crime; and (3) “have a specific intent or purpose to further the group’s criminal conduct” to be prosecuted. Helton, 624 N.E.2d at 508. The statute did not improperly establish guilt by mere association. Rather, it re *356 quired a defendant’s association to “pose the threat feared by the legislature in proscribing it, that is, the threat of criminal gang activity which terrorizes peaceful citizens.” Id. at 509. The Helton court concluded that reading the requirement of “specific intent” into the statute was “a permissible construction” that did not require the court to rewrite what the legislature had enacted. Id. at 508 n. 13. Thus, the Helton court rejected the overbreadth challenge. Id. at 511; accord Jackson v. Indiana, 634 N.E.2d 532, 536-37 (Ind.Ct.App.1994) (adopting the Helton analysis).
Similarly, the defendant in Idaho v. Manzanares, 152 Idaho 410, 272 P.3d 382 (2012), pled guilty to recruiting a criminal gang member under a statute that proscribed “knowingly soliciting, inviting, encouraging or otherwise causing a person to actively participate in a criminal gang.” Idaho Code Ann. § 18-8504(1)(a) (2007). Like the Florida statute, the Idaho law defined “criminal gang” as an ongoing group of three or more persons, with common identifying elements. Criminal gang members “individually or collectively engage in or have engaged in a pattern of criminal gang activity” and have as one of their primary activities the commission of one or more of certain enumerated offenses. Id. § 18-8502(1). Manzanares argued the statute was facially overbroad because it did not require the State to prove she had recruited the gang member with the specific intent to advance the gang’s criminal activities. Manzanares, 272 P.3d at 394.
Although the Idaho statute lacked an express “specific intent” requirement, the court in Manzanares concluded that the recruitment statute did require the prosecution to prove knowledge of furthering criminal activity. Id. at 397. Recognizing that “knowledge is a different mens rea than specific intent,” the Idaho court determined that section 18-8504(l)(a) “[wa]s sufficiently narrow to avoid implicating a substantial amount of protected conduct.” Id. The statute included an “active participation” element that, appropriately, did not criminalize merely soliciting or recruiting a person to be a passive member or associate of a group qualifying as a criminal gang, or simply inviting a person to attend a lawful political rally organized and hosted by a group the inviter knows is a criminal gang. Id. The court construed the statute as requiring that the recruiter know of the existence of the criminal gang and knowingly solicit, invite, encourage, or cause a person to actively participate in the gang’s criminal activities.
If the statutes addressed in Helton and Manzanares are not overbroad, then the comparable language in section 874.05(1) survives Enoch’s constitutional challenge. The Florida Legislature is not alone in enacting a statute criminalizing gang solicitation and recruitment for illegal purposes. Like Indiana and Idaho, California and Texas have enacted similar statutes.[3]
*357 b. Freedom of Association
Enoch also argues that section 874.05(1) violates the right of association, which is a separate and distinct component of the First Amendment. See Roberts v. U.S. Jaycees, 468 U.S. 609, 622, 104 S.Ct. 8244, 82 L.Ed.2d 462 (1984). No First Amendment right exists to associate or assemble for the purpose of promoting or conducting imminent criminal or delinquent acts. See Cole v. Arkansas, 338 U.S. 345, 352-54, 70 S.Ct. 172, 94 L.Ed. 155 (1949); Gallo v. Acuna, 14 Cal.4th 1090, 60 Cal.Rptr.2d 277, 929 P.2d 596, 608-09 (1997) (finding no First Amendment protection of gang members’ “collective public activities,” which were directed mainly at illegal drug trafficking and securing control of the community using systematic intimidation and violence); State v. Beasley, 317 So.2d 750, 753 (Fla.1975); Jackson, 634 N.E.2d at 536; State v. Tran, 252 Kan. 494, 847 P.2d 680, 687 (1993) (noting that the “free speech” protections in Brandenburg do not cover unprotected criminal associations). The State notes, and we agree, that whatever associational rights a criminal gang may have, such rights do not extend to the inevitable and imminent criminal or delinquent conduct proscribed in section 874.05(1). Beasley, 317 So.2d at 753.
2. Section 87U.11: The “Electronic Communication’’ Statute
Next, we must consider the First Amendment challenge in Count Two to section 874.11, which encompasses speech mixed with conduct, both connected with the use of electronic communication. This provision states:
874.11 Electronic communication. — Any person who, for the purpose of benefiting, promoting, or furthering the interests of a criminal gang, uses electronic communication to intimidate or harass other persons, or to advertise his or her presence in the community, including, but not limited to, such activities as distributing, selling, transmitting, or posting on the Internet any audio, video, or still image of criminal activity, commits a felony of the third degree, punishable as provided in [various statutes].
§ 874.11, Fla. Stat. (2009).
Absent a sufficiently close connection to crime, expressing a viewpoint is protected speech. McIntyre v. Ohio Elections Comm’n, 514 U.S. 334, 347, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). Because this regulation is content-based and involves speech and expressive conduct, it must pass strict scrutiny. Playboy Entm’t Grp., 529 U.S. at 803, 120 S.Ct. 1878. The Legislature is understandably concerned about the pervasive scope of the Internet and other electronic media when used for illegal ends. A component of the compelling governmental interest in preventing gangs’ criminal or delinquent acts is the proscription of electronic communication used with intent to further the criminal interests of gangs. Section 874.11 fulfills the compelling government interest in protecting the public by curbing criminal gangs’ use of electronic media to incite and commit crimes and delinquent acts.
The more challenging issue involves the second part of strict scrutiny. Addressing this prong, Enoch contends this statute criminalizes gang communications without reference to actual criminal activity. The *358 Legislature defines “criminal gang” as a group that commits criminal or delinquent acts as one of its primary activities, although significantly, crime “need not be the only, or even the most important, activity in which the gang engages.” § 874.03(l)(b) (emphasis added). “Criminal gang member” is very broadly defined. § 874.03(3). Enoch correctly asserts the generalized purpose of “benefiting, promoting, or furthering the interests of a criminal gang” is not narrowly drawn to effect the State’s compelling interest.
Section 874.11 criminalizes any person’s use of electronic communication, for the aforesaid purpose, “to intimidate or harass other persons” or “to advertise his or her presence in the community.” The statute not only covers unprotected speech and conduct, but also impermissibly treads upon protected speech and conduct because it proscribes “criminal gang” communications without reference to actual or imminent criminal activity. See City of Harvard v. Gaut, 277 Ill.App.3d 1, 214 Ill.Dec. 68, 660 N.E.2d 259, 262-64 (1996) (concluding that ordinance making it unlawful for any person within the city to wear known gang colors, emblems, or other insignia was unconstitutionally over-broad and covered symbolic speech and freedom of expression, despite the City’s narrowing construction under which a person would have to know he or she was wearing prohibited items); Christina Rube, Gang Expression on the Internet: Florida Statute Section 874.11 Is a Violation of First Amendment Rights, 59 Cath. U.L. Rev. 1199, 1218-21 (2010).
Moreover, section 874.11 is not readily susceptible to any narrowing construction that will protect First Amendment rights. Like the “gang recruitment” statute, the “electronic communication” provision contains no express requirement of knowledge of the gang’s criminal activity; unlike section 874.05(1), however, section 874.11 includes no reference to inevitable illegal conduct. Thus, on its face, it includes any person who uses electronic communication to advertise his or her presence in the community to further the interests of a criminal gang, irrespective of whether the person (1) knows the gang “has as one of its primary activities the commission of criminal or delinquent acts” and “spends a substantial amount of time engaged in such activity,” or (2) has the intent to further such illegal interests. § 874.03(1). The exceptionally broad wording of the statute prevents us from limiting its application to only those individuals with criminal knowledge or intent. Cf. Ohio v. Woodbridge, 153 Ohio App.3d 121, 791 N.E.2d 1035, 1040 (2003) (rejecting overbreadth challenge to statute criminalizing participation in a criminal gang, which attached criminal liability only to a person who was an active gang member, knew the gang engaged in a pattern of criminal activity, and purposely promoted, furthered, or assisted other gang members in such a pattern).
As written, this law forbids any person’s use of electronic communication not only for intimidation or harassment of others, but also for self-advertisement to further a criminal gang’s interests, illegal or otherwise. This provision lacks any requirement that the person perform some overt act toward, or incitement of, illegal activity. It provides no nexus between “any person’s” speech or conduct and the imminent commission of crime.
Without adequate limiting language, this provision contravenes the requirements of Brandenburg and covers a substantial range of protected speech, conduct, and associational activity. Although the state can criminalize inducement or conspiracy to take lawless action, the government cannot constitutionally forbid the expression *359 of viewpoints without establishing a nexus between such expression and impending criminal activity. Brandenburg, 395 U.S. at 447-48, 89 S.Ct. 1827; United States v. Rahman, 189 F.3d 88, 115 (2d Cir.1999); Dep’t of Revenue v. Magazine Publishers of Am., Inc., 604 So.2d 459, 462 (Fla.1992). Further, it is well established that mere knowing membership in, or association with, a group that engages in illegal and legal conduct, without a specific intent to further the illegal aims of the group, is not a crime. Keyishian v. Bd. of Regents of Univ. of State of N.Y., 385 U.S. 589, 606-07, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).
Under section 874.11, any person could face prosecution merely for presenting his or her views advocating any of the myriad interests of a criminal gang. This statute broadly covers the use of electronic communication and is “not limited to” direct incitement to criminal activity. The sweeping prohibition of the use of electronic communication to advertise one’s presence in the community — regardless of whether it is intended to benefit, promote, or further the criminal gang’s illegal interests and incite imminent lawlessness — certainly encompasses protected rights.[4] The effect of the unrestricted language in section 874.11 on expressive activity is real and substantial, judged against its clearly legitimate coverage. Broadrick v. Oklahoma, 413 U.S. at 615, 93 S.Ct. 2908.
“[T]he framers of the First Amendment wrote it in broad, liberal terms.” Dep’t of Educ. v. Lewis, 416 So.2d 455, 463 (Fla.1982). Without appropriate restrictions to afford any person “breathing space [for the] fruitful exercise” of his or her fundamental rights, Gertz v. Robert Welch, Inc., 418 U.S. 323, 342, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the broad proscriptions in section 874.11 are repugnant to the First Amendment. Acknowledging “the challenges of applying the Constitution to ever-advancing technology,” Justice Scalia’s majority opinion in Brown v. Entertainment Merchants Association recognized that the constitutional rights protected under the First Amendment do not change upon the advent of new communication media. — U.S. -, 131 S.Ct. 2729, 2733, 2738-42, 180 L.Ed.2d 708 (2011) (concluding that statute prohibiting sale or rental of “violent video games” to minors, including patently offensive options allowing a player to kill, maim, dismember, or sexually assault an image of a human being, failed to satisfy either prong of strict scrutiny and was an invalid restriction upon the content of speech protected under First Amendment). The fact that the statute at issue focuses on electronic communication in no way justifies treading upon hallowed constitutional rights.
Recognizing section 874.11 as unconstitutionally overbroad should not in any way impede legitimate Florida law enforcement efforts to curb illegal acts by criminal gangs, given other laws already on the books. Actually soliciting “the commission of any crime” has long been proscribed. §§ 777.011, .04(2), Fla. Stat. (2011). Criminal gang members who actually conspire to commit a criminal offense may be prosecuted for conspiracy. § 777.04(3). Persons *360 who assist or aid a criminal gang member (or anyone else) in committing a crime are subject to prosecution as accessories after the fact. § 777.03(1). The references to the use of “electronic communication” in section 874.11 relate to the means of furthering a criminal gang’s interests but do not create any offense that is not already proscribed under other statutes.
In considering the permissible scope of proscriptions against groups that perform lawless acts, the parties have extensively discussed the circumstances and reasoning in Holder v. Humanitarian Law Project, - U.S. -, -, 130 S.Ct. 2705, 2712, 177 L.Ed.2d 355 (2010), in which the Court rejected vagueness and First Amendment claims. The federal law in question criminalized “knowingly provid[ing] material support or resources to a foreign terrorist organization” or attempting or conspiring to do so. To violate that provision, the defendant had to know the group was a designated terrorist organization and engaged, or had engaged, in terrorism. 18 U.S.C. § 2339B(a)(1). The plaintiffs in Holder claimed to have sought to facilitate only the lawful, non-violent, humanitarian, and political advocacy purposes of two designated foreign terrorist organizations that had committed numerous terrorist attacks and had harmed American citizens. 130 S.Ct. at 2713-14.
The Court in Holder concluded that Congress had justifiably rejected the viewpoint that the plaintiffs were supporting only lawful endeavors. In materially supporting the designated foreign terrorist organizations’ non-violent, “innocent” conduct, supporters freed up other resources inside those organizations that could be put to violent, illegal use. Id. at 2725. The Court adopted the reasoning that “[tjerrorist organizations do not maintain organizational ‘firewalls’ that would prevent or deter ... sharing and commingling of support and benefits,” nor do such organizations “maintain legitimate financial firewalls between those funds raised for civil, nonviolent activities, and those ultimately used to support violent, terrorist operations.” Id. at 2725-26 (emphasis in original) (quoted from an evidentiary affidavit). The majority in Holder construed the statute as covering “only material support coordinated with or under the direction of a designated foreign terrorist organization.” Id. at 2726.
Significantly, the Holder court emphasized what the federal statute did not proscribe. Clearly, “[independent advocacy that might be viewed as promoting the group’s legitimacy is not covered.” Id. The statute neither prevented the plaintiffs from becoming members of the two groups in question, nor imposed sanctions if they did so. Id. at 2723. Under the “material support” statute, the plaintiffs could say whatever they wanted on any topic and could “speak and write freely” about the two groups. Id. Thus, the Court concluded that Congress had not “sought to suppress ideas or opinions in the form of ‘pure political speech.’ ” Id.
Holder is not dispositive of our analysis of section 874.11. The instant case is about a domestic criminal gang. The groups in Holder were designated foreign terrorist organizations, and the federal statutory proscription reached only those persons who provided material support coordinated with, or under the direction of, such organizations. Unlike the statute in Holder, section 874.11 criminalizes the use of electronic communication merely to advertise one’s presence in the community, irrespective of whether the person is or is not an active criminal gang member, for the purpose of benefiting, promoting, or furthering even the gang’s legitimate interests. It is not a narrowly drawn “mate *361 rial support” statute addressing only lawless action.
Citing language in Holder, the State suggests that the lack of an organizational and financial firewall between a criminal gang’s lawful and illegal interests renders criminal any speech or conduct in furtherance of a criminal gang. We are unwilling to accept this very broad conclusion in reviewing section 874.11. As noted by the Holder court:
[W]e in no way suggest that a regulation of independent speech would pass constitutional muster, even if the Government were to show that such speech benefits foreign terrorist organizations. We also do not suggest that Congress could extend the same prohibition on material support at issue here to domestic organizations.
Id. at 2730. We agree with the Idaho Supreme Court’s conclusion in Manza-nares that “[t]he unique facts and narrow holding [in Holder] distinguish it from and make it inapplicable to cases in which statutes affect the associational rights of those who engage in expressive association with domestic organizations.” 272 P.3d at 412.
In summary, the State possesses a compelling interest in restricting speech, expressive conduct, and associational activity integral to known criminal conduct, including incitements to crime or delinquent acts expressed through the use of electronic communication. However, the sweeping statutory language in section 874.11 substantially and impermissibly encroaches upon First Amendment rights because it is not limited to furthering the criminal interests of a gang.
The expansive First Amendment protects speech and expressive conduct, including the dissemination of unpopular and intolerant opinions on controversial and disfavored subjects. R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 382, 391-94, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (concluding that ordinance making it disorderly conduct for a person to place a symbol, object, or graffiti on property, having reasonable grounds to know it will arouse anger, alarm, or resentment in others based on race, creed, religion, or gender, was impermissible viewpoint discrimination and was facially unconstitutional under First Amendment). “[T]he freedoms of speech, press, petition and assembly guaranteed by the First Amendment must be accorded to the ideas we hate or sooner or later they will be denied to the ideas we cherish.” Healy v. James, 408 U.S. 169, 188, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972) (quoting with approval Communist Party of the U.S. v. Subversive Activities Control Bd., 367 U.S. 1, 137, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961) (Black, J., dissenting)). “The interest in encouraging freedom of expression in a democratic society outweighs any theoretical but unproven benefit of censorship.” Reno v. ACLU, 521 U.S. 844, 885, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). Concluding that the overbroad language cannot be excised without essentially eviscerating section 874.11, we are constrained to find it facially unconstitutional. See Bd. of Airport Comm’rs of L.A. v. Jews for Jesus, Inc., 482 U.S. 569, 574-76, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987) (finding no saving construction of overbroad municipal resolution that prohibited “First Amendment activities” in airport central terminal and thus “reache[d] the universe of expressive activity”). Accordingly, we reverse Enoch’s conviction and sentence under Count Two.
B. Substantive Due Process
Enoch’s next claim is that sections 874.05(1) and 874.11 violate the Florida Constitution’s guarantees of substantive due process because both provisions encompass and criminalize innocent conduct *362 and are susceptible to unreasonable, arbitrary, and capricious enforcement. See Art. I, § 9, Fla. Const.; Suit, 906 So.2d at 1020-21; O.C., 748 So.2d at 949; State v. Saiez, 489 So.2d 1125, 1128-29 (Fla.1986). The Florida Supreme Court in State v. Saiez described the parameters of this constitutional protection as follows:
[I]n addition to the requirement that a statute’s purpose be for the general welfare, the guarantee of due process requires that the means selected shall have a reasonable and substantial relation to the object sought to be attained and shall not be unreasonable, arbitrary, or capricious.
489 So.2d at 1128.
A statute violates substantive due process if it “impermissibly imputes guilt to an individual merely on the basis of his associations and sympathies, rather than because of some concrete personal involvement in criminal conduct.” Scales v. United States, 367 U.S. 203, 220, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961) (stating that active membership in an organization engaged in illegal activity, by a person having guilty knowledge and intent, is a sufficiently substantial relationship to the crime of advocating the violent overthrow of the government to withstand a Fifth Amendment challenge). A law violates substantive due process also by criminalizing innocent conduct. See Sult, 906 So.2d at 1020-21; Saiez, 489 So.2d at 1128-29 (holding that a statute criminalizing mere possession of embossing machinery, used to reproduce credit cards, violated substantive due process because the legislative means of curtailing fraud bore no reasonable relationship to the admittedly proper objective).
1. Section 871.05(1): The “Gang Recruitment” Statute
Enoch argues that section 874.05(1) broadly encompasses innocent activity because it does not require an agreement to commit a crime or delinquent act and criminalizes “thought crime,” the mere idea of soliciting the commission of an unidentified crime at some indefinite time. Focusing on the solicited or recruited party, Enoch asserts this provision does not require proof that the recruiter convey to the recruited person that a condition of membership' is the commission of any crime.
To support this argument, Enoch relies on State v. Gaines, 431 So.2d 736 (Fla. 4th DCA 1983). After the State charged the defendant in Gaines with solicitation of another to commit an offense prohibited by law pursuant to section 777.04(2), Florida Statutes (1981), the trial court dismissed the information. Gaines, 431 So.2d at 737. The undisputed facts showed that Gaines had “entered into serious discussions” with an undercover officer to effect the maiming of Gaines’ stepson. This was not solicitation to commit a proscribed offense, however, because Gaines reserved to herself the right to determine later whether, not just when, the “hit” would actually occur. Gaines “reached the threshold of the crime but never crossed it.” Id. The Gaines court held that a defendant, with intent that another person commit a crime, must command, entice, hire, advise, incite, or otherwise encourage another to commit a crime if the State is to prove solicitation to commit a prohibited offense. Id. Thus, Enoch correctly states that thinking about an illegal act is not, by itself, a crime.
Section 874.05(1) does not punish a person for simply thinking or talking about crime; rather, this provision requires proof that a person intentionally recruit or solicit another person to become a gang member knowing of the criminal condition of membership or continued membership. As we noted in our analysis of section *363 874.05(1) in the First Amendment challenge, this provision covers only speech and conduct inextricably related to inevitable, impending illegal activity. Unlike the circumstances in Gaines, section 874.05(1) crosses the line from protected thought about lawlessness to incitement to actual criminal or delinquent activity. Because the government can proscribe criminal and delinquent acts, the State “cannot be powerless against those who work to bring about that behavior.” Scales, 367 U.S. at 225 n. 17, 81 S.Ct. 1469.
The Florida Legislature has clearly enunciated the need to protect the public welfare by curbing criminal gang activity and eliminating the acute dangers presented by the phenomenal numerical growth, geographical expansion, and operational sophistication of gangs that commit crime as one of their primary activities. See § 874.02(3). The “gang recruitment” provision neither prohibits mere membership in a criminal gang nor criminalizes innocent conduct.[5] We conclude that the legislative means chosen to effect the compelling governmental interest in protecting the public have a reasonable, substantial nexus to the goal to be attained. Section 874.05(1) is carefully designed to avoid an unreasonable, arbitrary, or capricious application and does not violate substantive due process.
2. Section 87Jp.ll: The “Electronic Communication” Statute
The State contends that section 874.11 does not criminalize innocent conduct because the electronic communication must be for the purpose of benefiting, promoting, or furthering the interests of a “criminal gang.” § 874.03(1)(b). Enoch submits that the self-advertising language in section 874.11 would improperly proscribe a criminal gang member’s Internet video posting announcing: “The [name of] Gang is here in the community. Support us!” He also offers the example of any person’s video promoting a gang-sponsored food or clothing drive to support disaster victims or community relief. Enoch notes that such promotional expressions can simply announce one’s presence in the community and, to fall within the statutory proscriptions, need not be intended to illegally intimidate or harass other persons. The various parts of section 874.11 cannot be viewed in isolation. Rather, the language must be construed together — within the entire context of the provision and the stated legislative concerns and understood intent — in a manner that will neither attribute an absurd intent to the Legislature nor lead to an absurd result. See Kasischke v. State, 991 So.2d 803, 813-14 (Fla.2008).
The State contends that Enoch’s argument was essentially raised and rejected in Holder. See 130 S.Ct. at 2712, 2725. The State posits that, just as the designated foreign terrorist organizations did not (and very likely could not) erect an organizational and financial firewall to designate a clear separation between innocent acts and terrorist and other criminal activities in Holder, Florida’s statutory definitions of *364 “criminal gang” and “criminal gang member” include some activities that are legal and others that are not. Although the Legislature has defined “criminal gang” so that the commission of criminal or delinquent acts is one of its primary activities and the gang spends a substantial amount of time engaged in such punishable activity, the commission of criminal or delinquent acts “need not be the only, or even the most important, activity in which a criminal gang engages.” § 874.03(1)(b). To the extent a criminal gang secondarily engages in ostensibly legitimate, innocent activities to promote, benefit, or further its interests, the State can forbid only such conduct that is inextricably intertwined with illegal acts without treading upon substantive due process rights. See Holder, 130 S.Ct. at 2725-26. Thus, the Holder analogy is not apt.
The sweeping language in the “electronic communication” provision covers both criminal and innocent activity and, in doing so, prohibits expression and associational activity with a purpose to benefit, promote, or further even the non-criminal interests of a criminal gang. This broad coverage includes a substantial amount of innocent conduct and thus offends substantive due process. We conclude that section 874.11 lacks sufficient constitutional safeguards.[6] The State’s interest in controlling gangs’ criminal and delinquent acts is a compelling one, but the government cannot effect its purposes in a provision that criminalizes innocent conduct.
C. “Void for Vagueness ”
Enoch’s final claim asserts that the “gang recruitment” and “electronic communication” statutes are unconstitutionally vague, that the first statute is internally inconsistent and contradictory, and that the second statute fails to indicate whether the defendant must have the intent to commit a crime to be guilty. Constitutional protections impose certain standards on a statute:
[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.
Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). “[I]f a reasonable and practical construction can be given to the language of a statute, or its terms made reasonably certain by reference to other definable sources, it will not be held void for vagueness.” Cashatt v. State, 873 So.2d 430, 435 (Fla. 1st DCA 2004).
As a threshold matter, the State challenges Enoch’s standing to raise this particular facial challenge to either statute: the parties agreed the prosecutor had a sufficient factual basis to proceed, Enoch engaged in conduct clearly prohibited by the plain and ordinary meaning of both statutes, and his lawless conduct lacks constitutional protection. See State v. Brake, 796 So.2d 522, 526-27 (Fla.2001); J.L.S. v. State, 947 So.2d 641, 646 (Fla. 3d DCA 2007). One commentator has explained the rules of standing in this context as follows:
In vagueness challenges, a defendant ordinarily has standing to challenge a stat *365 ute as unconstitutionally vague only in its application to the conduct of which he is accused. In other words, a defendant must show that the statute’s alleged vagueness actually deprived him, in light of his conduct, of due process of law.
Jeffrey Merle Evans, Void-for-Vagueness—Judicial Response to Allegedly Vague Statutes—State v. Zuanich, 92 Wash.2d 61, 593 P.2d 1314 (1979), 56 Wash. L. Rev. 131, 136-37 (1980) (citations omitted).
Thus, before analyzing the two statutes for unconstitutional vagueness, we must determine whether Enoch has standing. This requires us to examine Enoch’s own conduct. See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 n. 7, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); J.L.S., 947 So.2d at 646. To have standing to challenge either statute for unconstitutional vagueness, Enoch cannot have engaged in conduct that is clearly prohibited by section 874.05(1) or section 874.11. Thus, if a statute can be constitutionally applied to the challenger, then he or she lacks standing to bring a facial vagueness challenge. See Hoffman Estates, 455 U.S. at 495 n. 7, 102 S.Ct. 1186; Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); Sieniarecki v. State, 756 So.2d 68, 75 (Fla.2000); Arizona v. Baldenegro, 188 Ariz. 10, 932 P.2d 275, 279 (Ariz.App.Ct.1996). Enoch’s reply brief deals only with the merits of the constitutional claim and does not directly respond to the State’s challenge to his standing. Instead, Enoch contends that the State simply misunderstands his arguments.
In resolving the standing issue, we are guided by our sister court’s analogous decision in J.L.S. v. State, in which a juvenile raised constitutional claims (to a different statute), including void for vagueness. 947 So.2d at 646. After the trial court denied J.L.S.’s facial challenge, he pled nolo con-tendere while reserving his right to appeal the denial of his dispositive motion to dismiss. Id. at 643. Following the rule enunciated in Hoffman Estates and Sien-iarecki, the Third District Court of Appeal examined J.L.S.’s conduct before considering any hypothetical applications of the statute raised by the defense. J.L.S.’s own actions fell within the statutory prohibitions, for it was only after two warnings not to return to the school safety zone that the State charged J.L.S. with trespass and resisting arrest .without violence. Id. at 646. J.L.S. admitted he was trespassing after a warning. Id. at 643, 646. The appellate court concluded J.L.S. lacked standing to raise a facial vagueness challenge to the provision regarding other persons’ hypothetical conduct. Id.; accord State v. Baal, 680 So.2d 608, 610 (Fla. 2d DCA 1996).
“A plea of nolo contendere admits the facts for the purpose- of the pending prosecution.” Vinson v. State, 345 So.2d 711, 713 (Fla.1977). Like J.L.S., Enoch entered a plea of nolo contendere while expressly reserving his right to pursue his constitutional challenges on appeal. The prosecutor offered a brief recitation of the facts supporting the charges, which the trial court accepted without an objection from Enoch. Like J.L.S. and the defendant in State v. Cyphers, 873 So.2d 471, 473 (Fla. 2d DCA 2004), Enoch does not contend that what he said and did on the DVD is outside the proscriptions of sections 874.05(1) and 874.11.
Given the unchallenged record evidence indicating Enoch engaged in specific conduct each statute proscribes, Enoch lacks standing to question the vagueness as applied to other persons. See Hoffman Estates, 455 U.S. at 495, 102 S.Ct. 1186; Wilkerson v. State, 401 So.2d 1110, 1112 (Fla.1981) (concluding, where defendant pled nolo contendere in prosecution for *366 animal cruelty, that he lacked standing to bring an overbreadth attack where the statute clearly proscribed his conduct); J.L.S., 947 So.2d at 646; Bryant v. State, 712 So.2d 781, 783 (Fla. 2d DCA 1998) (holding that defendant who was caught committing specific criminal conduct prohibited by a statute lacked standing to question the statute’s vagueness as applied to the hypothetically innocent conduct of others).
To summarize, we conclude that section 874.05(1) passes constitutional muster. However, section 874.11 covers protected speech, conduct, and association; substantially encroaches on these rights; and includes a significant amount of innocent conduct within its proscriptions. Enoch is foreclosed from asserting a “void-for-vagueness” claim against either statute for the reasons set forth in Hoffman Estates and J.L.S. We affirm Enoch’s conviction and sentence pursuant to section 874.05(1) and reverse his conviction and sentence pursuant to section 874.11.
AFFIRMED in part and REVERSED in part.
BENTON, C.J., and ROBERTS, J., concur.

. For example, a person could meet the statutory definition of a "criminal gang member” by simply adopting the style of dress of a criminal gang and using a hand sign identified as used by a criminal gang. § 874.03(3), Fla. Stat.

. E.g., Iowa v. Walker, 506 N.W.2d 430, 433 (Iowa 1993) (rejecting overbreadth challenge to statute proscribing membership or active participation in a criminal street gang, where the accused must have willfully aided and abetted any criminal act committed for the benefit of, at the direction of, or in association with any criminal street gang); Minnesota v. Mireles, 619 N.W.2d 558, 560-63 (Minn.Ct.App.2000) (holding that a statute proscribing the commission of a crime for the benefit of, at the direction of, in association with, or motivated by involvement with, a criminal gang with the specific intent to promote, further, or assist in criminal conduct by gang members was not facially overbroad so as to violate the First Amendment).

. Cal. Penal Code § 186.26(a) (proscribing solicitation or recruitment of another to active participation in a criminal street gang, with intent that the solicited or recruited person participate in a pattern of criminal street gang activity or with intent that the person promote, further, or assist in any felonious conduct by members of the criminal street gang); id. § 186.22(a) (proscribing active participation in any criminal street gang, with knowledge of gang's prior or current engagement in a pattern of criminal gang activity and willful promotion, furtherance, or assistance in any felonious criminal conduct by gang members); id. § 186.22(f) (defining "criminal street gang” as any group of three or more persons with common identifying elements, having as one of their primary activities the commission of an enumerated offense and individually or collectively engaging in or having engaged in a pattern of criminal gang activity); Tex. Penal Code § 71.022(a) *357 (making it a criminal offense knowingly to cause, enable, encourage, recruit, or solicit another person to become a member of a criminal street gang that, as a condition of initiation, admission, membership, or continued membership, requires the commission of certain offenses).

. It is not enough to rely on prosecutorial discretion to ensure that the statute is used only to target those furthering the "criminal” interests of a criminal gang.
[T]he First Amendment protects against the Government; it does not leave us at the mercy of the noblesse oblige. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.
United States v. Stevens, - U.S. -, 130 S.Ct. 1577, 1591, 176 L.Ed.2d 435 (2010) (declaring federal statute that punished the distribution of animal cruelty videos unconstitutional as overbroad).

. Compare People v. Gardeley, 14 Cal.4th 605, 59 Cal.Rptr.2d 356, 927 P.2d 713, 725 (1996) (concluding that Street Terrorism Enforcement and Prevention Act did not punish defendants for associates’ acts, but increased punishment of defendants who committed a felony to aid or abet criminal conduct of a group that had, as its primary function, the commission of specified criminal acts and whose members had actually committed specific crimes, acting with specific intent to do so) with Lanzetta v. New Jersey, 306 U.S. 451, 452-55, 59 S.Ct. 618, 83 L.Ed. 888 (1939) (concluding that statute criminalizing being a "gangster,” defined as anyone not engaged in any lawful occupation, known to be a member of any gang comprising two or more persons, and having the requisite convictions, violated due process because of its vagueness and ill-defined scope).

. Cf. Rodriguez v. Georgia, 284 Ga. 803, 671 S.E.2d 497, 501 (2009) (rejecting a challenge alleging facial vagueness and First Amendment violations, and noting that the violation of a statute making it unlawful for any person employed by, or associated with, a criminal street gang to conduct or participate in criminal street gang activity through the commission of certain enumerated crimes required some nexus between the act and an intent to further street gang activity); Ohio v. Bennett, 150 Ohio App.3d 450, 782 N.E.2d 101, 110 (2002) (concluding that a statute proscribing participation in a criminal gang comported with due process because it punished criminal conduct, not mere association).